THE STATE *ex rel.* YARNELL, *Appellant*, v. THE COLE COUNTY COURT.

1. **The State Lunatic Asylum**: PAY PATIENTS: COUNTY PATIENTS. It is not essential to the validity of an order of the county court making a pay patient in the State Lunatic Asylum a county patient, that there should be an express finding that the patient has not sufficient estate to support him; this will be presumed. An order that a patient already in the asylum "became a county patient at the lunatic asylum from this date," without more, will bind the county for his support there.

2. ———; INQUEST OF LUNACY. The validity of such an order cannot be affected by proof of irregularities in the inquest of lunacy which took place before he was sent to the asylum.

3. ———: INSANE POOR CRIMINALS. A citizen of Cole county, confined in the State Asylum as a county patient of that county, escaped and went to Moniteau county, and there committed a homicide, for which he was tried and acquitted on the ground of insanity, and in accordance with the statute was remanded by the circuit court to the custody of the sheriff, to be held at the expense of *the proper county* until the county court should cause him to be removed to the asylum. *Held*, that under the statute, (R. S. 1879, §§ 4153, 4145, 4143,) this man remained the county patient of Cole county; that Cole county was the "proper county" to pay the expenses of his confinement, and that it was the duty of the county court of that county to cause him to be removed to the asylum.

*Appeal from Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Draffen & Williams* and *Jas. E. Hazell* for appellant.

*J. R. Edwards* for respondent.

NORTON, J.—It appears from the record in this case that in July, 1880, upon information given to the probate court of Cole county that Z. T. McGirk, then a resident of said county, was insane and incapable of managing his affairs, said McGirk was brought into said court, where, upon an examination had before said court and a jury of six persons, the said jury returned a verdict that said McGirk was of unsound mind and should be confined in an asylum for the insane, whereupon the court appointed George W. McGirk his guardian, by whom he was placed, on the 15th day of July, 1880, in the State Lunatic Asylum at Fulton, as a pay patient. It further appears that said McGirk remained at said asylum till the 23rd day of September, 1880, at which time, being allowed to walk about the grounds unattended, he made his escape therefrom and went to his mother's home in Moniteau county, where, on the 28th day of December, 1880, he killed his brother and guardian, George W. McGirk; that for this offense he was arrested on the same or the next day and was confined in the Moniteau county jail; that he was indicted for the homicide, and on the 12th day of November, 1881, was tried and acquitted on the ground that he was insane. It further appears that the circuit court of Moniteau county, in which the trial was had, after finding that it would be unsafe to permit said McGirk to go at large, and that he was a poor person, ordered that he be remanded to the custody of the sheriff of said county, to be held in safe custody at the expense of the proper county until the county court should cause him to be removed to the lunatic asylum, as in case of other insane poor persons.

It also appears that both the county courts of Moniteau and Cole counties refused to make an order for the removal of said McGirk to the lunatic asylum ; whereupon the sheriff of Moniteau county, as relator, instituted this proceeding by mandamus, setting up the above facts, and that said McGirk had, by an order of the county court of

6—80

Cole county, been made a county patient, and asking that the county court of Cole county be compelled to make an order for the removal of said McGirk to the asylum. This claim is resisted by the county mainly on the ground that the county court of Moniteau county, the place where the offense was committed and the cause was tried and the defendant acquitted, was the proper county to make the order.

The circuit court ruled in favor of defendant, refused to make the writ peremptory, and from this action of the 1. THE STATE LUNA-court the plaintiff has appealed, and as-
TIC ASYLUM: p a y signs for error, among other things, the
patients: c o u n t y
patients.          refusal of the court to receive in evidence the order of the county court of Cole county made in the matter of making McGirk a patient of Cole county in the State Lunatic Asylum, which order is as follows : "Ordered by the court that Z. T. McGirk become a county patient at the lunatic asylum from this date." The date of the above order is August 30th, 1880. It was objected to on the ground that it was a nullity, because the statute was not complied with in making it.

The statute authorizing a pay patient confined in the asylum to be made a county patient, provides as follows : " If the county court of the proper county shall so order, the clerk thereof shall transmit to the superintendent a certificate under seal setting forth that any patient in the asylum has not sufficient estate to support him at the asylum. Upon the receipt of such certificate by the superintendent, such person shall be a county patient of such county, and shall be supported by such county, as provided in the cases of poor patients." R. S. 1879, § 4140. As this section conferred jurisdiction upon the county court over the subject matter, and invested it with full power to make a pay patient a county patient, the order made by the court and offered in evidence cannot be said to be a nullity. It may be irregular, but that does not make it void. It is the fact that the pay patient has not estate suf-

ficient to support him at the asylum that authorizes the county court to make him a county patient, to be supported at the expense of the county; and we can indulge the presumption that the court found this fact to exist and based its order upon it. This order, if certified to the superintendent, would be as binding on the county as a certificate of the clerk stating that he had been ordered by the court to certify that such pay patient had not estate sufficient to support him.

The fact that McGirk, then a citizen of Cole county, was placed in the lunatic asylum in July, 1880, as a pay patient, is not controvertible, and in no way dependent on the question whether his sanity at the inquest of lunacy was tried by six or twelve jurors. While such a question might affect the regularity of the action of the probate court in appointing a guardian, it cannot affect the fact that he was confined in the asylum as a pay patient, nor the fact that he was subsequently, by the order of the county court, made a county patient. We will, therefore, in the disposition of the case, consider the order as being sufficiently efficacious to make said McGirk a county patient of Cole county from the time it was made.

The question which this record presents is: Was it, under the facts above stated, the duty of the county court of Cole county to make an order for the removal of said McGirk to the lunatic asylum at Fulton, as in case of insane poor persons? This question, we think, is answered in the affirmative by sections 4153, 4143 and 4145, Revised Statutes. It is provided in section 4153 that " every patient in the asylum shall be deemed to be the county patient of the county first sending him, till one year after his regular discharge from the asylum." Section 4143 provides " that when a person tried upon indictment for any crime or misdemeanor shall be acquitted on the sole ground that he was insane, the fact shall be found by the jury in their verdict, and the prisoner

shall be dealt with as provided in the following sections." One of these sections, 4145, provides "that if the prisoner be a poor person, the court shall make an order remanding him to the custody of the sheriff, or other officer of court, requiring him to hold the prisoner in safe custody at the expense of the proper county, until the county court shall cause him to be removed to the asylum, as in the case of insane poor persons."

We think it apparent from the above statutory provisions and the general law regulating asylums, (2 R. S., p. 818,) that it was the intention of the legislature to cast the burden of supporting the insane poor upon each county where such insane poor have acquired a residence or settlement, and that where an insane poor person is sent from a county and is discharged from the asylum, he shall be deemed to be the county patient of such county for the period of twelve months after such discharge, the language of the statute being that every patient in the asylum shall be deemed to be the county patient of the county first sending him till one year after his regular discharge. It seems to have been the purpose of the legislature to provide that before the support of an insane poor person of one county can be shifted to or cast upon another county, such insane person must have ceased to reside in the former county for the period of one year. The same policy has been indicated in the law regulating the support of the poor, (2. R. S., p. 1289, §§ 6579, 6581,) where it is provided that poor persons shall be received, maintained and supported by the county of which they are inhabitants; and that no person shall be deemed an inhabitant, within the meaning of the chapter, who has not resided in the county for the space of twelve months next preceding the time of any order being made respecting such person, or who shall have removed from another county for the purpose of imposing the burden of keeping such poor person on the county where he or she last resided for the time aforesaid.

The facts disclosed in the record of this case are, that

McGirk was a citizen of Cole county at the time he was put in the asylum on the 15th day of July, 1880 ; that on the 30th day of August, 1880, he was, by the order of the county court of Cole county, made a county patient; that on the 23rd day of September, 1880, he escaped from the asylum, went to Moniteau county and there remained till the 28th day of December, 1880, when he killed his brother and guardian ; that for this offense he was indicted and subsequently acquitted upon the ground that he was insane ; that the circuit court of Moniteau county, in which he was tried, found that he was a poor person, and that it would be unsafe to permit him to go at large, and ordered him into the custody of the sheriff, to be kept in safe custody at the expense of the proper county till the county court should order him to be removed to the asylum; that the county court of Cole county refused to make the order for such removal. In the light of these facts and the statutory provisions above quoted, we are of the opinion that the .expense incurred in the confinement of said McGirk since the trial and the order of the court remanding him to the custody of the sheriff, is properly chargeable to the county of Cole, and that the county court of Cole county is the proper court to order his removal to the State asylum, as in cases of other insane poor persons.

The judgment of the circuit court will, therefore, be reversed and a judgment entered by this court awarding a peremptory writ of mandamus as prayed for by relator. All concur.