Thomas v. Macon County.

THOMAS, Treasurer, etc., Appellant, v. MACON COUNTY.

### Division One, May 27, 1903.

1. **Insane Persons**: MAINTENANCE AT ASYLUM. A judgment against a county for maintaining an insane person at a State lunatic asylum can not be rendered unless there is a statute specifically authorizing such judgment.

2. ———: ———: RESIDENT OF COUNTY. The county court has no authority to send a person to the asylum or maintain one there at the expense of the county who is not a resident of the county.

3. ———: ———: ———: INSANE CONVICT. The expenses of maintaining a convict transferred by the Governor from the penitentiary to a lunatic asylum, on the ground that he has become insane, can not be charged to the county in which he was convicted, unless he was a resident of that county. His actual presence in that county at the time of his conviction and of the commission of the crime is not sufficient proof of his residence.

4. ———: ———: ———: EVIDENCE. A statement in the indictment which speaks of the insane person as "late of the county aforesaid" is no evidence of his residence there.

5. ———: ———: ———: ———: TESTIMONY OF ACCUSED. Testimony of the accused at the trial at which he was convicted that he did not reside in the county in which convicted, is competent testimony on behalf of the county in a suit against it for his maintenance at a lunatic asylum, as a part of the res gestae.

6. ———: ———: ———: PRESUMPTION. The indictment, conviction, sentence and pardon of an insane convict raise no presumption, in a suit against the county for the cost of his maintenance at a lunatic asylum, that he was a resident of the county in which convicted.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*B. E. Guthrie* and *T. A. Boulware* for appellant.

(1) The crime, arrest, indictment and sentence in Macon county, of William Jones, raises the presumption that he was a resident and citizen of said county. The indictment recites that he was late of that county. The presumption, if not conclusive, is at least great. It should not be set aside by slight or indefinite evidence. Mere hearsay and the opinions of witnesses are wholly insufficient. (2) The defendant's evidence consists of the mere opinions and conjectures of officers, witnesses and jurors. In addition, it is wholly negative in its character and of no probative force. It is entirely speculative in its nature. The best that can be said of it is that it is wholly inferential, and is not the setting forth of facts within the knowledge of the witnesses. Its effect was to show the ignorance of the witnesses and not to enlighten the court. (3) The declarations of William Jones were simply hearsay. They were entirely incompetent and inadmissible. Their admission was prejudicial to the plaintiff. Jones's Law of Evidence, secs. 299 to 302; 1 Greenleaf on Evidence (15 Ed.), sec. 99; Crockett v. Althouse, 35 Mo. App. 404; Bevis v. Railroad, 26 Mo. App. 19; Sangster v. Dalton, 12 S. W. 202. The court evidently attached great importance to the fact that Jones at his trial may have sworn he was not a resident of Macon county, but a tramp. But such swearing could not relieve the testimony of its hearsay and inadmissible character. Jones, Ev., sec. 302. (4) William Jones was legally in the penitentiary. He became insane while there. He was legally removed to the asylum. He thereby became entitled to the benefits of the institution. Sec. 4895, R. S. 1899. But the asylum is entitled to payment for its care of him. Sec. 2666 and 4887, R. S. 1899. (5) The hearsay evidence of the defendant was improperly admitted. It was misleading and prejudicial to the plaintiff. Gilletts, Indirect and Collateral Evidence, sec. 225, p. 283; Chouteau v. Searcy, 12 Mo. 736; Gentry v. Field, 143 Mo. 411; State v. Pruett, 144 Mo. 94.

*Ben Franklin* and *R. G. Mitchell* for respondent.

(1) The insane man, William Jones, was not, and is not, a citizen and resident of Macon county, as charged in the petition and in every count thereof. There was no word of evidence to show him a citizen and but little, if any, more evidence that said William Jones was ever a resident of Macon county. His acts and declarations were competent to prove that he was no resident of Macon, especially when those declarations were made before this cause of action arose and when Jones had no motive to falsify and when his words and acts do not disagree. Pennsylvania v. Ravenel, 21 How. 103; Chambers v. Prince, 75 Fed. 176; In re Catherine Roberts, 8 Paige (N. Y.) 519; People v. Pease, 27 N. Y. 59; Gorham v. Canton, 5 Greenleaf (Me.) 266; Ennis v. Smith, 14 How. (U. S.) 422; Fidelity & C. Co. v. Preston, 28 S. W. 658; Scotland Co. v. McKee, 168 Mo. 282. (2) It is not questioned that under the provisions of section 4227, Revised Statutes 1889, section 2666, Revised Statutes 1899, the Governor had the power by his warrant to the sheriff of the proper county, or the warden of the penitentiary, to transfer William Jones, if found to be insane, to the insane asylum at Fulton, or to suspend or commute his sentence until his reason be restored. This section authorizes the Governor to transfer an insane convict undergoing sentence from the penitentiary to the asylum, but in no way affects or relates to the question of who shall bear the expense of the convict while at the asylum save and except to refer that question to the law governing the expense of caring for the insane poor. (3) If he was not a resident of Macon county, this case is disposed of by the following cases: Shields v. Johnson, 144 Mo. 76; State ex rel. v. Cole County, 80 Mo. 80; Scotland Co. v. McKee, supra.

VALLIANT, J.—Plaintiff as treasurer of the State Lunatic Asylum No. 1 at Fulton sues the defendant county for money expended in maintaining one William Jones, an inmate of the asylum, and alleged to be a citizen and resident of that county.

The account sued on runs from August 3, 1893, to October 1, 1899. The answer was a general denial. The cause was tried by the court, jury waived. There was a finding and judgment for the defendant from which the plaintiff appeals.

The plaintiff on the trial introduced in evidence an indictment of the grand jury of Macon county at the September term, 1891, of the circuit court against the person concerning whom this suit has arisen, designating him as "William Jones, late of the county aforesaid," and charging him with the crime of burglary; also the court record showing the conviction and sentence to the penitentiary of the indicted man, his subsequent pardon by the Governor during his term in the penitentiary on the ground that he was insane, and his removal and confinement as an insane patient in the Fulton asylum. Plaintiff also introduced itemized accounts for the maintenance of the insane man at the asylum duly certified by the superintendent as if in compliance with sections 4853 and 4873, Revised Statutes 1899, and evidence tending to show that he was an insolvent person.

Defendant's testimony was in the main that of well-acquainted citizens and officials of Macon county tending to prove that the insane man was never a resident of the county. Defendant also introduced evidence to the effect that the man when he was on trial testified that he did not live in the county and was a tramp.

The plaintiff asked several instructions, all of which were refused. They were: a peremptory direction for a finding for the plaintiff; that the indictment, conviction, commitment, subsequent pardon on the ground of insanity and reception of the insane man into the asylum

and keeping him there rendered the defendant county liable for the cost of his maintenance; that the indictment and conviction in Macon county created a presumption that the man was a citizen thereof and that presumption should prevail until satisfactory evidence is shown that he was a citizen of some other county in the State of Missouri; that the impressions of witnesses that he was not a resident, and that the statements of the man himself that he was a tramp, were not evidence; that the words "proper county" in section 2666, Revised Statutes 1899, mean the county in which the person was indicted and convicted. Exceptions to the refusal of the instructions were duly preserved.

The plaintiff's cause of action, if any he has, is founded entirely on the statute law relating to the subject. If, therefore, he is entitled to recover he will be able to point to a statute which under the circumstances of this case imposes the burden of maintaining the insane man in question upon the defendant county; if no such statute can be shown, the county is not liable. The plaintiff realizing this, has pointed out certain sections of the statute on which he relies.

Section 2666, Revised Statutes 1899, makes it the duty of the Governor, when he ascertains that a convict in the penitentiary has become insane, to pardon such insane person or suspend the sentence and he "may by his warrant to the sheriff of the proper county, or the warden of the penitentiary," cause him to be removed to the lunatic asylum and kept there for treatment; "and the expense of conveying such lunatic to the asylum shall be audited and paid out of the fund appropriated for the payment of criminal costs, but the expenses at the asylum for his board and clothing shall be paid as now provided by law in cases of the insane poor; provided, if such person shall have property, the costs shall be paid out of his property, by his guardian."

We may assume that this person had no property and therefore the cost of keeping him at the asylum is

to "be paid as now provided by law in cases of the insane poor."

Plaintiff next points to section 4867 which provides that: "The several county courts shall have power to send to the asylum such of their insane poor as may be entitled to admission thereto." And it specifies that the county shall pay for the support and maintenance of such insane poor persons as the county court may send to the asylum.

Under that section, however, even the county court is not authorized by its arbitrary will or unlimited discretion to send any insane poor person it may select to the asylum at the expense of the county, but the court must hold due proceedings upon a petition filed showing that the insane poor person is "a citizen residing in the county" and other essential facts as prescribed by the statute, and there must be a trial of the facts and a judgment of the court thereupon. [Secs. 4874 to 4878, inclusive.] The county court has no authority under those statutes to send a person to the asylum or maintain one there at the expense of the county who is not a resident thereof.

Section 4883 authorizes the county court to certify to the superintendent of the asylum that a pay patient already in the asylum has not sufficient estate to support him there, and when that is done he becomes a county patient, and the county is chargeable with the cost of his keeping.

Then sections 4885 and 4887 make provision for another case, that is, when a person is tried for a criminal offense and acquitted on the ground that he was insane and he remains in that condition, the court is to order him to be kept in custody "at the expense of the proper county, until the county court shall cause him to be removed to the asylum, as in cases of insane poor persons." The statute then directs that the county court shall proceed in the matter as directed in sections 4874 and following, except that it is not to enter on the

inquiry as to insanity, that fact having already been adjudged by the circuit court.

The sections above referred to contain the only provisions to be found in our statutes expressly authorizing the cost of keeping a patient in the asylum to be charged to a county and in each of those cases it requires that the person be a resident of the county and that the county court should take the prescribed action in the premises.

Where, as in State ex rel. v. Cole County Court, 80 Mo. 80, all the facts within the purview of sections 4885 and 4887, above mentioned, appear as matters of record, the county court will be required by mandamus to make the necessary orders to place the person in the asylum at the expense of the county. In that case the county court had previously taken such action under section 4140, Revised Statutes 1879 (now sec. 4883, R. S. 1899) as was therein authorized to make the person in question a county patient. This court per NORTON, J., there said: "We think it apparent from the above statutory provisions and the general law regulating asylums (2 R. S. 1879, p. 818) that it was the intention of the Legislature to cast the burden of supporting the insane poor upon each county where such insane poor have acquired a residence or settlement, and that when an insane person is sent from a county and is discharged from the asylum, he shall be deemed to be the county patient of such county for twelve months after such discharge, the language of the statute being that every patient in the asylum shall be deemed to be the county patient of the county first sending him till one year after his regular discharge." The court was there speaking of a person sent to the asylum by the county court, and further commenting, said that it was the same policy indicated in the law regulating the support of the poor, wherein it was provided that no person shall be deemed an inhabitant within the meaning of the chapter who has not resided in the county for the space of twelve months next

preceding the time of any order being made respecting such person.

In Shields v. Johnson County, 144 Mo. 76, the court was dealing with the same statute, under which the case at bar has arisen. In that case the man had been convicted in Johnson county, and during his imprisonment in the penitentiary had become insane and taken to the asylum by order of the Governor. This court held that it was not essential under those circumstances and under that section of the statute, that the county court should first adjudge the man to be a resident of the county, but the court held that it was essential for the plaintiff to prove that fact in order to render the county liable. The court, per BURGESS, J., said: "That he was a citizen of the county at the time of his being sentenced to the penitentiary, has since become insane, and is insolvent, are conditions precedent to the liability of the county for his board and clothing at the asylum, may be conceded, but all of these facts are alleged in the petition and being material averments, stand admitted by the demurrer." And again the court said: "While in this case the burden would rest upon the plaintiff of showing that Farland was a resident of Johnson county at the time of his conviction, and that he had no property, those issues are properly presented by the allegations in the petition," etc.

In Scotland County v. McKee, 168 Mo. 282, the court said: "There is nothing in the statutes which regulate the terms upon which a county court may or shall send a patient to the asylum at the county's expense that requires or authorizes the court to send a person who is not a resident of the county."

From the statutes and decisions above referred to we find that provision is made for the maintenance of a person in the insane asylum at the expense of the county in the following cases:

First. When the county court adjudges a person who is "a citizen residing in the county" to be insane

and insolvent and orders him to be sent to the asylum at the expense of the county.   [Sec. 4867.]

Second.   When the county court certifies to the superintendent of the asylum that a person already there as a pay patient has become insolvent. [Sec. 4883.]

Third.   Where a person on trial for a crime is acquitted on the ground that he was insane at the time he committed the act, in which case if he remains insane the county court shall proceed with him as in a case arising under the first clause of this enumeration, except that there will be no inquiry in the county court as to his insanity.   [Secs. 4885, 4887.]

Fourth.   When the convict becomes insane during his imprisonment and is sent to the asylum by order of the Governor, as in the case at bar.   [Sec. 2666.]

In the first three of these categories the county court is required to take action and pass judgment and when it has done so the patient is held in the asylum at the expense of the county.   And, as was held in State ex rel. v. Cole County Court, above referred to, that, if the county court in a proper case should refuse to take action, it may be required by mandamus to do so.   But of the 114 counties in the State against which is the mandamus to go?   In the case just cited it went against the county court of Cole county because the insane person in that case was a resident of that county.   No county court has jurisdiction to send a person to the asylum who is not a resident of the county and therefore could not be required by mandamus to do so.

Of the four classes provided for by the statutes quoted, three are placed within the jurisdiction of the county court to find the facts essential to the reception and maintenance of the insane person in the asylum at the county's expense and one of those essential facts is residence of the person in the county.   The fourth class requires no adjudication of the facts by the county court but authorizes the Governor to "by his warrant to the sheriff of the proper county, or warden of the

penitentiary, order such lunatic to be conveyed to the asylum and there kept until restored to reason. . . . and the expense of conveying such lunatic to the asylum shall be audited and paid out of the fund appropriated for the payment of criminal costs, but the expenses at the asylum for his board and clothing shall be paid as now provided by law in cases of the insane poor. Provided, if such person shall have property, the costs shall be paid out of his property, by his guardian." The plaintiff relies on that part of the clause just quoted which provides that the expenses "shall be paid as now provided by law in cases of the insane poor," for his right to recover in this case. As we have seen, the only provision made by law for charging such expense to a county, is in case the insane person is a resident of the county. The residence of the insane person in Macon county, therefore, becomes an essential fact for the plaintiff in this case to prove before he can recover.

The only evidence on the part of the plaintiff on this point was that the person in question was indicted for burglary, convicted and sentenced to the penitentiary in October, 1891, in the Macon Circuit Court. That evidence goes to show that the man was at that time actually present in the county, and in so far as actual presence there at some time is a necessary link in a chain of evidence to show residence in the county, that evidence may be said to point in that direction, but it does not go to the whole length of proving prima facie that he was a resident of the county. When the law requires residence of a person to be proven, proof of his actual presence at the place at one particular time, does not satisfy the requirement, and much less does the fact weigh when the person is there as a prisoner and against his will.

Appellant quotes as evidence the phrase in the indictment, "William Jones, late of the county aforesaid." The indictment in using the words "late of the county aforesaid" merely followed an ancient form that has

now no significance; it would have been just as effectual
if those words had been omitted, and with those words
in the indictment the defendant could have been just
as legally convicted if the evidence had shown that he
was not of that county. [Sec. 2535, R. S. 1899.] Those
words were immaterial in that case and are of no effect
as evidence in this case; besides the county was not a
party to that proceeding and had no control of the
record.

On the other hand the defendant introduced a con-
siderable amount of evidence going to show that the
person named in the indictment was not a resident of
the county. This evidence of course was of a negative
character, but it was the only kind that the defendant's
side of the question was susceptible of receiving, and
it was competent.

Defendant introduced evidence to show that the in-
dicted man stated when he was on trial that he did not
reside in the county, but was a tramp. Appellant as-
signs the admission of that evidence as error. So far
as the merits of the case were concerned, the statement
of the accused as to the place of his residence was im-
material; therefore it can not be said to have been a
declaration either in his own interest or against his
interest. But as explaining his presence in the county
at the time his words were a part of the *res gestae*. The
plaintiff introduced evidence to show that the man was
present in the county at a certain time and he seeks to
draw from that fact the conclusion, or at least the prima
facie presumption that he resided there. If any such
deduction is to be made, the fact should be considered
in connection with what the man said at the time con-
cerning his presence then and there. The court did
not err in admitting that evidence.

The refused instructions for the plaintiff were on
the theory that the indictment, conviction, sentence and
pardon raised the presumption that the convicted man
was a resident of the county and that that presumption

should prevail until the defendant showed that he was a resident of some other county in the State. From what has already been said it will appear that in our judgment the court committed no error in refusing those instructions.

The plaintiff wholly failed in his proof to show that the insane person was a resident of Macon county, and for that reason the plaintiff is not entitled to recover. The judgment is affirmed. All concur, except *Robinson, J.*, absent.